UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NORTH POINTE INSURANCE
COMPANY,

    Plaintiff,

v.                                 Case No:   6:16-cv-449-Orl-41TBS

DONE RIGHT HEATING & AIR, INC.,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff, North Pointe Insurance Company's Motion for Default Final Judgment as to Defendant Done Right Heating & Air, Inc. (Doc. 14). Upon due consideration, I respectfully recommend that the motion be **GRANTED**.

### I. Background

Plaintiff North Pointe Insurance Company issued commercial general liability insurance policy # 3094122391 (the "Policy") to Defendant Done Right Heating & Air, Inc. ("Done Right"), for the policy period from April 13, 2010 to April 13, 2011 (Doc. 1, ¶ 9; Doc. 1-1).

Harris Lear and James A. Johnson, Jr., entered into a contract with Clarke Corporation of Mid-Florida, Inc. d/b/a Continental, Inc. ("Continental") for the construction of a single family dwelling in Orlando, Florida (the "Project") (Doc. 1, ¶¶ 10-11). Continental subcontracted the HVAC and solar power systems work to Done Right (Id., ¶ 12). The project was completed and a Certificate of Occupancy was issued by the City of Orlando on January 13, 2011 (Id., ¶ 13).

On March 25, 2013, Lear and Johnson filed a complaint against Continental in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, alleging claims for breach of contract, fraudulent lien, violation of Florida Statutes § 553.84, and negligence related to the Project (Doc. 1-2). Lear and Johnson amended their complaint and, on March 10, 2015, filed a second amended complaint in the state court action (Doc. 1-4). The second amended complaint alleges claims against Continental and several sub-contractors involved in the Project, including Done Right (Id.). The second amended complaint alleges that Done Right's installation of the heating, air conditioning, and solar power systems was "defective and deficient" and in violation of the applicable building codes (Id., ¶ 43). It asserts claims against Done Right for violations of FLA. STAT. § 553.84 and negligence based on deficiencies in Done Right's work (Id., ¶¶ 43-44, 58-65; Doc. 1, ¶¶ 15, 17). Continental filed third party claims against Done Right for indemnification, equitable subrogation, violation of FLA. STAT. § 553.84, negligence, and breach of contract (Doc. 1, ¶¶ 16, 18; Docs. 1-5, 1-6).

On April 9, 2015, Continental sent a copy of the second amended complaint and amended third party complaint to North Pointe "as the commercial general liability insurance carrier for Done Right, inquiring if North Pointe would be providing a defense to Done Right in the underlying action and otherwise providing notice of the claims against Done Right." (Doc. 1, ¶ 19 (emphasis omitted)). This was the first notice North Pointe received of the claim (Id.).

North Pointe contends that it owes no legal or contractual duty to defend Done Right in the state court action. It has nevertheless provided Done Right with a legal defense "pursuant to a full reservation of North Pointe's rights under the insurance contract and in accordance with Florida Statutes § 627.426." (Doc. 1, ¶ 28 (emphasis

- 2 -

omitted)). North Pointe filed this action on March 17, 2016, to determine its obligations under the Policy (Doc. 1).

The "Insuring Agreement" section of Policy's Commercial General Liability Form provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[1] or "property damage"[2] to which this insurance applies. We will have the right and duty to defend the insured against any "suit"[3] seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> …
>
> This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence"[4] that takes place in the "coverage territory"; (2) The "bodily injury" or "property damage" occurs during the policy period; and (3) Prior to the policy period, no [insured or employee] knew that the "bodily injury" or "property damage" had occurred ….

(Doc. 1-1 at 63). The policy excludes coverage for, *inter alia*,

> "Property damage" to "your product"[5] arising out of it or any part of it.

---

[1] "'Bodily injury' means bodily injury, sickness or disease sustained by a person. including death resulting from any of these at any time (Doc. 1-1 at 75).

[2] "'Property damage' means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it. For the purposes of this insurance, electronic data is not tangible property." (Id. at 77).

[3] "'Suit' means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (Id.).

[4] "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 76).

[5] "Your product" means "(1) any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired; and (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products." It includes (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and (2) The providing of or failure to provide warnings or instructions." It does "not include vending machines or other property rented to or located for the use of others but not sold." (Id. at 77-78).

…

"Property damage" to "your work"[6] arising out of it or any part of it and included in the "products-completed operations hazard".[7]

…

"Property damage" to "impaired property"[8] or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

…

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on

---

[6] "Your work" means "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." It includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and (2) The providing of or failure to provide warnings or instructions." (Id. at 78).

[7] "Products-completed operations hazard" "[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except …. (Id. at 77).

[8] "Impaired property" "means tangible property, other than 'your property' or 'your work', that cannot be used or is less useful because: a. It incorporates 'your property' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement." (Id. at 75).

> your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> …
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

(Id. at 64-67).

North Pointe alleges that it does not have a duty to defend or indemnify Done Right in the state court action because the Policy

> does not afford coverage for the damages sought in the underlying litigation because the allegations:
>
> a. Do not assert claims within the scope of the coverage provided by the terms and conditions of the insurance agreement; and/or
>
> b. Because coverage is otherwise precluded by operation of the policy's specific exclusions and/or conditions.

(Id., ¶¶ 30-31). North Pointe seeks a declaration from this Court that it "does not owe a duty to defend or indemnify Done Right for the underlying claims made by Owners and Continental." (Id. at 15 (emphasis omitted)).

## II. Discussion

Rule 55(b) of the Federal Rules of Civil Procedure authorizes a court to enter default judgment against a party whose default has been entered by the clerk. Once default has been entered, a defaulting defendant is considered to have admitted all the well-pleaded allegations of fact in the plaintiff's complaint. See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). But, "a defendant's default does not in itself warrant the court in entering a default judgment," and it "is not treated as an absolute confession

- 5 -

by the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Const. Co., Ltd., v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[9] Along with the requirement that the clerk's entry of default be proper, the court may enter a default judgment only if there is "a sufficient basis in the pleadings for the judgment entered." Id. The party seeking default judgment must also comply with the requirements of the Servicemembers Civil Relief Act. 50 U.S.C. § 3931.

As an initial matter, I find that jurisdiction is proper pursuant to 28 U.S.C. § 1332. When suit was filed, Plaintiff was a Pennsylvania corporation with its principal place of business in Wisconsin, Done Right was a dissolved Florida corporation with its principal place of business in Florida, and the amount in controversy exceeded $75,000, exclusive of interest and costs (Doc. 1, ¶¶ 3, 6-7; Doc. 16).

Federal Rule of Civil Procedure 4(h) provides for service on a corporation by *inter alia*, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or service is made." FED. R. CIV. P. 4(e)(1) and (h)(1)(a). Section 48.081(1) Florida Statutes provides for service on a corporation by service on the corporation's president. FLA. STAT. § 48.081(1)(a). Plaintiff served Done Right by serving its president on March 25, 2016 (Doc. 6). I find this to be good service of process on Defendant.

Based on the foregoing, I find the entry of default by the Clerk against Done Right was proper. "When service of process is properly effected, but the served party fails to respond in a timely manner, the clerk must enter a default against that party once the

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

district court is informed of that failure." Kelly v. Florida, 233 F. App'x 883, 885 (11th Cir. 2007) (citing FED. R. CIV. P. 55(a)).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Consistent with the 'cases' and 'controversies' requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an 'actual controversy.'" Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999) (quoting Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir. 1985)). "Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties." Id. (citing Emory, 756 F.2d at 1552). "'The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Id. (quoting Emory, 756 F.2d at 1552).

Done Right is a defendant and third-party defendant in the state court action. In that case, Lear and Johnson have asserted claims against Done Right for violations of FLA. STAT. § 553.84 and negligence based on Done Right's alleged "defective and deficient" installation of heating, air conditioning, and solar power systems in a single family residence (Doc. 1-4, ¶¶ 43-44, 58-65; Doc. 1, ¶¶ 15, 17). Continental asserts third party claims against Done Right for indemnification, equitable subrogation, violation of FLA. STAT. § 553.84, negligence, and breach of contract based on these same alleged deficiencies (Doc. 1, ¶¶ 16, 18; Docs. 1-5, 1-6). The pleadings in the state court action

contain few details about the deficiencies in Done Right's work. An attachment to the second amended complaint describes deficiencies in the heating, air conditioning, and solar panel systems without specifically mentioning Done Right:

> 4 Seasons Air Conditioning and Heating has inspected the 3-ton condenser unit and associated solar panels. Along with the multiple leaks in the refrigerant lines that they have identified, 4 Seasons has reported that the solar panels are not providing electricity to the unit. Their research of the manufacturer's information on this particular until led to the discovery that the refrigerant lines that currently connect this condenser to its respective air handler exceed the maximum length allowed by the manufacturer.

(Doc. 1-4, ¶ 43; Doc. 1-5 at 101). An engineer hired by Lear and Johnson estimates that $181,163.14 in damages are allocable to Done Right as a result of the improperly installed HVAC and solar power systems (Doc. 16 at 2, 7). The estimate includes $136,755 for HVAC, $9,625.53 for equipment, $3,593.39 for general conditions, and $31,189.22 for overhead/profit (Id.).

North Pointe contends that it owes no legal or contractual duty to defend Done Right in the state court action because the alleged damages are specifically excluded by the terms of the Policy. It has nevertheless provided Done Right with a legal defense "pursuant to a full reservation of North Pointe's rights under the insurance contract and in accordance with Florida Statutes § 627.426." (Doc. 1, ¶ 28 (emphasis omitted)). North Pointe represents that it has a valid need for a declaration of its rights and obligations to defend or indemnify under the Policy, and that it is seeking relief accordingly, not merely to seek legal advice of the Court.

The pleadings in the state court action allege that Done Right's work on the heating, air conditioning, and solar panel systems for the Project was deficient. The refrigerant lines in the air conditioning allegedly have "multiple leaks" and "the solar

- 8 -

panels are not providing electricity to the unit" because "the refrigerant lines that currently connect this condenser to its respective air handler exceed the maximum length allowed by the manufacturer." (Doc. 1-5 at 101). Notably absent are any allegations that Done Right caused bodily injury or damage to any property other than the materials, parts, or equipment it furnished and installed. The alleged damages are therefore expressly excluded by the Policy (Doc. 1-1 at 63-67).   Because Lear and Johnson and Continental's claims do not seek damages for bodily injury or property damages to which the Policy applies, Plaintiff has no duty to defend Done Right in the state court action (Id. at 63).

### III. Recommendation

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that

(1) Plaintiff's Motion for Default Final Judgment (Doc. 14) be **GRANTED**, and

(2) The Court find and declare that Plaintiff North Pointe Insurance Company does not owe a duty to defend or indemnify Defendant Done Right Heating & Air, Inc., under the Policy for the claims asserted by Lear and Johnson and Continental in the underlying state court action.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on July 7, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Unrepresented Parties